# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA R. WERT, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANCORP, U.S. BANK NATIONAL ASSOCIATION,<br><br>Defendants. | Case No. 13-cv-3130-BAS(AGS)<br><br>**ORDER:**<br><br>**(1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT;**<br><br>**(2) OVERRULING OBJECTIONS TO THE SETTLEMENT;**<br><br>**(3) CONDITIONALLY APPROVING PROPOSED SETTLEMENT CLASS; AND**<br><br>**(4) SETTING HEARING OF FINAL APPROVAL OF SETTLEMENT** |

Plaintiff Monica R. Wert, on behalf of herself and a putative class, filed claims against Defendants U.S. Bancorp and U.S. Bank National Association, claiming they failed to provide compliant itemized wage statements in violation of California Labor Code § 226 and were entitled to the recovery of civil penalties for this violation under the Private Attorneys General's Act ("PAGA"), Cal. Labor Code § 2698 *et seq.* (ECF

No. 45.) Additionally, Plaintiff requests civil penalties under PAGA alleging that Defendants violated California Labor Code § 512 when they failed to comply with California's meal-period requirements. (*Id.*)

Now pending before this Court is the parties' joint motion for preliminary approval of class action settlement (ECF No. 86), which seeks an order conditionally certifying a proposed settlement class, preliminarily approving class action settlement, and setting a hearing for final approval of the settlement. Also pending is Charles Rodriguez's objections to the preliminary approval of the class action settlement. (ECF No. 87.)

## I. UNDERLYING CLAIMS

In the Second Amended Complaint ("SAC"), which is the operative complaint in this case, Plaintiff alleges first that Defendants "violated California Labor Code § 226 by failing to provide compliant itemized wage statements to Plaintiff and their other current and former California U.S. Bank employees." (SAC ¶ 2.) Plaintiff claims that the wage statements failed to: (1) show total hours worked by the employee; (2) adequately show deductions from wages; (3) itemize the dates in prior pay periods in which adjustments were made; and (4) itemize the inclusive dates of the pay period, including the pay period begin date. (SAC ¶ 27.)

In the SAC, Plaintiff also alleges that Defendants "in violation of California Labor Code §§ 512 and 226.7, failed to provide Plaintiff and California U.S. Bank employees with required meal periods." (SAC ¶ 2.) Plaintiff alleges that she, and other non-exempt workers, were forced to work more than five hours without meal breaks. (SAC ¶¶ 29, 32.)

//
//
//
//

## II. PROPOSED SETTLEMENT

The proposed settlement agreement is attached as Exhibit A to the Declaration of Matthew S. Dente in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. (Dente Decl. Ex. A ("Settlement" or "Settlement Agreement"), ECF No. 86.) It proposes to certify for settlement only four different subclasses. The subclasses are defined as follows:

(1) "**Exempt Paystub Class**" is defined as "all individuals employed by either Defendant in California as exempt employees who received one or more paper paychecks and/or paper wage statements at any time between November 13, 2012 and July 17, 2014 (without regard to the fact that such individuals had access to Employee Self Service)." (Settlement ¶ 16.)

(2) "**Non-exempt Paystub Class**" is defined as "all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time from November 13, 2012 to December 31, 2014." (Settlement ¶ 30.)

(3) "**Meal Period Provision Class**" is defined as "all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2012 and December 31, 2016 and who, during that time frame, received pay under the Other Pay Code." (Settlement ¶ 26.) "Other Pay Code" means the pay code Defendants used to make meal period premium payments. (Settlement ¶ 34.)

(4) "**Meal Period Pay Computation Class**" is defined as "all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2009 and December 31, 2016 and who during that time frame received pay under the other Pay Code." (Settlement ¶ 23.)

Individuals may be a member of more than one class.

The Settlement provides that Defendants will set aside a non-reversionary settlement amount of $7,000,000. (Settlement ¶ 22.) From this Maximum Settlement Fund will be deducted any Class Representative Enhancement Payment (Plaintiff

will seek $10,000 (Settlement ¶ 61i)), Class Counsel fees (Counsel will request 30% of the settlement or $2,100,000 (Settlement ¶ 61j)), Costs (not to exceed $25,000 (Settlement ¶ 61j)), settlement administration costs (the parties estimate this to be $55,552), and payments to the Labor and Workforce Development Agency ("LWDA") as 75% of funds attributable to release of PAGA claims (the parties calculate this amount to be $572,500 (Settlement ¶ 61ci-iv.)) Assuming the amounts above are approved by the Court, the net settlement amount distributed to Class Members will be $4,236,948.

The parties propose that Rust Consulting be appointed Settlement Administrator. (Settlement ¶ 46.) Fourteen days after granting the preliminary approval, Defendants will provide the Settlement Administrator with information including names and addresses of all Class Members. (Settlement ¶ 60.) The Settlement Administrator will calculate the individual settlement payment for each class member, based which class each individual is a member of and how many pay period the individual was employed by Defendants. (Settlement ¶ 60a.) Within twenty-eight calendar days of receiving the list of Class Members, the Settlement Administrator will mail Notices to the Class Members which will include the estimated payment amounts, number of eligible pay periods applicable to them based on Defendants' records, and will provide a mechanism for the Class Member to challenge these calculations. (Settlement ¶ 60bii.)

After final settlement is approved, checks will be mailed directly to Class Members. The checks will be valid for six months, after which they will revert to the State of California Department of Industrial Relations Unclaimed Wages Fund in the name of the Class Member who did not cash the check. (Settlement ¶ 61.)

In addition to the monetary settlement, Defendants have agreed to make changes to their payroll system to resolve any issues raised by this lawsuit. (Dente Decl. ¶ 16.)

//

The Agreement provides for a Release from each participating Class Member, depending on the subclass of which he or she is a member, as follows:

(1) "**Exempt Paystub Class**" and "**Non-exempt Paystub Class**" agree to release "any and all claims for failure to provide accurate and/or complete itemized wage statements in violation of Labor Code § 226(a) between [November 13, 2012 and July 17, 2014 ("Exempt Paystub Class") or between November 13, 2012 to December 31, 2014 ("Non-exempt Paystub Class")], including a release for statutory penalties under Labor Code § 226(e) and civil penalties recoverable under PAGA for violations of Labor Code § 226(a), as well as a release for all claims known and unknown (pursuant to Civil Code § 1542), but only as to these released claims." (Settlement ¶¶ 17, 31.)

(2) "**Meal Period Provision Class**" agrees to release "any and all claims for civil penalties under PAGA for failure to provide meal periods in accordance with Labor Code §§ 512 and 226.7 and Section 11(A) of IWC Wage Order 4-2011 for the pay periods in which and/or for which they received pay under the Other Pay Code, as well as a release from all claims known and unknown (pursuant to Civil Code § 1542), but only as to these released claims, from November 13, 2012 through December 31, 2016." (Settlement ¶ 27.)

(3) "**Meal Period Pay Computation Class**" agrees to release "any and all claims for failure to properly compute compensation for paid meal period premiums under Labor Code § 226.7 and the Section 11(B) of IWC Wage Order 4-2011, including compensation claims under § 226.7 and claims for civil penalties under PAGA for § 226.7 violations for failure to properly calculate the regular rate when paying a meal period premium. For the period from November 13, 2010 to [April 14, 2013], there shall be a release of all claims for statutory penalties under Labor Code § 203, without limitation as to the underlying basis for the claim." For the period between April 15, 2013 and December 31, 2016, there shall be a release of penalties under Labor Code § 203, but only to the extent the claim is premised on Defendants'

alleged failure to properly calculate the regular rate when paying a meal period premium, not claims premised on other underlying alleged violations like unpaid overtime, off-the-clock work, or for any other violation other than Defendants' failure to properly calculate the regular rate when paying a meal period premium. (Settlement ¶ 24; Amendment to Class Action Settlement ("Settlement Amendment," ECF No. 90-2.)[1]

## III. ANALYSIS

### A. Class Certification (for Settlement Purposes Only)

Here, the Parties seek to certify a class for settlement purposes only. Federal Rule of Civil Procedure 23(a) provides that a class may be certified "only if (1) the class is so numerous that joinder of members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to meeting the Rule 23(a) requirements, a class action must fall into one of the categories laid out in Rule 23(b). Fed. R. Civ. P. 23(b). The parties seek to certify the class under Rule 23(b)(3). Both Rules 23(a) and 23(b) are satisfied in this case.

#### 1. Rule 23(a)

##### a. Numerosity

The numerosity requirement is generally satisfied when the class contains 40 or more members, a threshold exceeded in this case. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Cleano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). The Settlement Agreement represents that the

---

[1] The time period for this release was amended by the Parties in response to the Objection filed by Charles Rodriguez discussed below.

"Meal Period Pay Computation Class" has 15,092 members, and the "Meal Period Provision Class" has 9,429 members. (Settlement ¶¶ 23, 26.) Presumably the other two subclasses have at least this many members. Thus, the first requirement of numerosity is satisfied.

### b. Commonality

The commonality requirement requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, the class claims raise similar questions including: (1) whether the itemized wage statements issued to Class members omitted or misreported information required by Labor Code § 226(a) and whether that omission or misreporting resulted in injury under § 226(e); (2) whether Defendants had a policy of not providing meal periods to Class Members as required by California law, as evidenced by Defendants' payment of extra compensation under § 226.7; (3) whether civil penalties are available despite Defendants' payment of extra compensation under § 226.7; and (4) whether the extra compensation under § 226.7 was correctly calculated. Because Class Members here have the same or similar allegations, there are common questions of law and fact and Rule 23(a)(2) is satisfied.

### c. Typicality

In general, the claims of the representative parties "need not be substantially identical" to those of all absent class members and need only be "reasonably co-extensive" in order to qualify as typical. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff worked for Defendants in California as a non-exempt, hourly employee during the time periods at issue, received wage statements with the alleged deficiencies, received extra hours for pay in lieu of missed meal periods and claims these extra hours were incorrectly calculated. Rule 23(a)(3) is therefore satisfied.

### d. Adequacy of Representation

For the class representative to adequately and fairly protect the interests of the class, two criteria must be satisfied. "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Picture, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, the Named Plaintiff has vigorously pursued the action thus far and appears capable of continuing to do so. Although Plaintiff seeks an incentive award in addition to her award as a Class Member, this does not necessarily mean she has a conflicting interest with the remaining members of the class. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases" and "do not, by themselves, create an impermissible conflict between class members and their representatives []."). Furthermore, Counsel appear qualified, competent, and experienced in class-action lawsuits. (Dente Decl. ¶¶ 2-5; Aguilar Decl. ¶¶ 3-4, ECF No. 86-4; Meservy Decl. ¶¶ 2-6, ECF No. 86-6.) Rule 23(a)(4) thus appears to be satisfied.

### 2. Rule 23(b)

The parties seek to maintain their class action under Rule 23(b)(3). Under Rule 23(b)(3), "[p]laintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka v, Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). The following factors are pertinent to this analysis:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, the alternative to a class action would be to have the individual Class Members, which amount to thousands of individuals, file separate lawsuits. That would be both impractical and inefficient. Such individual litigation would consume judicial resources, impose additional burdens and expenses on the litigants, and present a risk of inconsistent rulings. Thus, the Court finds class action is superior to other methods for fairly and efficiently adjudicating this controversy.

### B. Fairness, Reasonableness, and Adequacy of Proposed Settlement

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.3d 1268, 1276 (9th Cir. 1992). However, according to Federal Rule of Civil Procedure 23(e)(2), "the court may approve [a settlement that would bind class members] only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether the proposed settlement is fair, reasonable, and adequate, "a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed

settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). There is no governmental participant. Therefore, the Court considers the first four of these factors below.

### 1. Strength of Plaintiff's Case, and Risk of Further Litigation

Although Plaintiff believes the case has merit, she and her counsel recognize that Defendants had legal and factual grounds available to them for defending this action. (Dente Decl. ¶¶ 20-22.) Even if Plaintiff succeeded in proving that Defendants provided non-complaint wage statements, Defendants argued that employees had access to all required information under an electronic system, the omission of any information in the wage statements resulted in no injury and any omission was not knowing or intentional.

With respect to the computation of meal period payments, Defendants had a strong legal argument that bonus and other forms of non-base pay were not required to be paid as part of meal and rest break premium payments. The existence of this unresolved legal argument meant the case would almost certainly have been appealed with uncertain and delayed results.

Finally, with respect to the provision of meal periods, there were clear factual issues as to whether the provision of payment under the "other pay code" necessarily signified that meal periods were involuntarily not provided to the entire class.

The risk of future motions for summary judgment, for class certification and eventual appeals weighs in favor of settlement at this stage of the proceedings.

### 2. Consideration Offered

In this case, the Defendants agree to provide a non-reversionary settlement amount of $7,000,000. Even with reductions for attorneys' fees, costs, administrative fees, and enhancement award for the named Plaintiff, this is not an insignificant amount. Furthermore, the state will receive $572,500 in PAGA penalties.

Additionally, the Defendants have agreed to make changes to their payroll system to resolve any issues raised by this lawsuit. (Dente Decl. ¶ 16.)

Although, if Plaintiffs' allegations were proven true, Plaintiff and Class members might be entitled to greater compensation, this does not mean that the settlement is inadequate. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "[The] very essence of a settlement is a compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

Although the Objector argues that this amount is insufficient because it does not provide additional compensation for the additional releases in the Agreement, the Court disagrees, as discussed below. The Court finds the consideration offered, at this stage of the proceedings, appears to be reasonable.

### 3. Extent of Discovery Completed and Stage of Proceedings

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026. This case, however, has been pending for over three years during which the case has been heavily litigated, including motions to remand and multiple motions to dismiss. (Dente Decl. ¶ 19.) The parties have also engaged in discovery including Requests for Production, Special Interrogatories and extensive document production. (Dente Decl. ¶¶ 12, 18.) Just prior to depositions, the Parties agreed to participate in an all-day mediation with Joel Grossman at JAMS, an experienced mediator in the area of wage-hour actions. (Dente Decl. ¶¶ 13-14.) Although the matter did not resolve at mediation, the Parties continued to discuss the issues post-mediation and eventually came to a resolution several months later. (*Id.*)

//
//
//

It appears the parties engaged in significant discovery and significant litigation about the key legal and factual issues. The Court therefore concludes that this factor favors approval.

### 4. Experience and Views of Counsel

As laid out in their Declarations, Class Counsel are experienced in class action lawsuits, having lead or participated in numerous class-action lawsuits in state and federal courts. (Dente Decl. ¶¶ 2-5; Aguilar Decl. ¶¶ 3-4; Meservy Decl. ¶¶ 2-6.) Class Counsel declare that, considering the risks and the above-detailed extensive arms-length negotiations, they "believe this Settlement is in the best interests of the Class Members based on the negotiations and a detailed knowledge of the issues present in this Action." (Dente Decl. ¶ 42; Aguilar Decl. ¶ 7; Meservy Decl. ¶11.)

Generally, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *cf. Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D. N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience). Here, due especially to the experience and knowledge of Class Counsel, their recommendations are presumed to be reasonable, and this factor accordingly favors approval.

### 5. Reaction of Class Members / Objection Filed

Although it would be premature to completely assess the reaction of class members at this stage of the proceedings before the bulk of the Class Members have received notice, the Court has received one Objection filed by class member Charles Rodriguez. (ECF No. 87.) At the direction of the Court, both Plaintiff and Defendants filed Responses to this Objection. (ECF Nos. 90, 91.)

Rodriguez argues that the consideration is inadequate because it fails to take into consideration the overbroad releases in the Agreement. Rodriguez, who is

concerned that settlement of this case might affect his pending class action filed against Defendants in Los Angeles Superior Court on April 15, 2016, argues that, "Defendants have not paid to settle distinct Labor Code claims not pleaded or considered in this action—specifically claims for: (i) unpaid minimum and overtime wages pursuant to Labor Code §§ 510 and 1194 due to off-the-clock work; (ii) unpaid meal period premiums pursuant to Labor Code §§ 512, 226.7 and (iii) waiting time penalties pursuant to Labor Code § 203[.]" (Rodriguez's Objection 1, ECF No. 87.) Rodriguez is concerned the § 1542 release will affect his pending claims for (i) unpaid minimum wages and or overtime wages, and (ii) failure to provide meal and/or rest periods pursuant to Labor Code §§ 512, 226.7 and Section A of IWC Wage Order 4-2001. (*Id.* at 2.) Rodriguez claims he seeks unpaid wages not civil penalties, but that his claim for unpaid wages will be released by the release in this case. Finally, he claims that the Notice fails to comply with due process because it fails to advise the class of its potential effect on the Rodriguez class action. (*Id.* at 3.)

In response, the Parties have amended the Release agreement with respect to the "Meal Period Computation Class" to change the dates of the release under Labor Code § 203. With this amendment, the Parties agree that the Release will have little or no effect on Rodriguez's outstanding claims. Having considered the arguments and responses, the Court overrules Rodriguez's objections and finds that the settlement at this point of the proceedings appears fair, reasonable, and adequate.

First, from the outset, this case has involved Plaintiff's allegations that Defendants failed to correctly compute mealtime compensation and failed to give her and other class members the option to take meal time breaks. Therefore, to the extent Rodriguez argues that the Settlement attempts to expand the claims beyond those alleged in the complaint, this is incorrect. The fact that the Court dismissed some of these claims does not prohibit the parties from valuing and resolving the issue that was, in fact, alleged in the complaint. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("[A] federal court may release not only those claims

alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*.'"); *Officers for Justice v. Civil Serv. Com'n of City & Cnty. of San Francisco*, 688 F.2d 615, 634 n.18 (9th Cir. 1982) ("[W]here a particular type of relief potentially available to class members is compromised in the settlement process, it is mainly irrelevant whether or not that relief was specifically requested in the complaint. The breadth of negotiations is not necessarily strictly confined by the pleadings.").

Second, these claims were properly valued and considered during the settlement negotiations, so Rodriguez's arguments that no additional funding was available for the release of these claims is also incorrect.

Additionally, Rodriguez's concerns that his claims will be released are largely unfounded. The releases are carefully narrowed so that the § 1542 waiver is limited "only as to [the] released claims" not to all claims including unpaid minimum wages, unpaid overtime wages or off-the-clock work, as Rodriguez worries.

Finally, the amended waiver with respect to § 203 claims as to the "meal period computation class" assures that this waiver will now not affect Rodriguez. Rodriguez left his employment with Defendants in 2015, so the waiver never applied to his claim. The amended time period now assures that it also does not apply to other class members in his claim

### C. Fairness Hearing and Required Notice to Parties

#### 1. Notice Requirements

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule directs:

//

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

The proposed settlement agreement anticipates that the Parties will retain the services of a third party Claims Administrator, Rust Consulting ("Rust"). (Settlement ¶ 46.) Defendants will provide Rust with the last known address of each Class Member, and Rust will mail notice to each Class Member. (Settlement ¶ 60a.) Notice will include Defendants' calculation of each Class Member's work weeks of employment as well as Rust's resulting estimated settlement amount for each Class Member. (Settlement ¶ 60bii.) Rust will provide a mechanism whereby each Class Member may challenge this calculation. (*Id.*)

The Court has reviewed the proposed Notice as well as the notice procedures and finds that it satisfies the requirements of Rule 23(c)(2)(b).

### 2. Fairness Hearing

Rule 23(e)(2) requires that "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The purpose of a fairness hearing is to provide the court with sufficient evidence for it to make an informed decision relating to the fairness of the proposed settlement." *UAW v. General Motors Corp.*, 235 F.R.D. 383,

386 (E.D. Mich. 2006). A fairness hearing need not have all the procedures and protections of a full trial; it is a forum for intervenors to voice their objections and for the fairness of the settlement to be determined, and a court is within its discretion to limit the hearing as necessary to meet those objectives. *UAW*, 235 F.R.D. at 386; *Tenn. Ass'n of Health Maint. Org., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001).

Here, in their Settlement Agreement, the parties agree to a framework for Class Members who either wish to opt out or to object to the proposed Settlement. (Settlement ¶¶ 60d, 60e, 64.)

## IV. CONCLUSION & ORDER

In light of the foregoing, he Court **GRANTS** the parties' joint motion for preliminary approval of the class action settlement (ECF No. 86), and hereby **ORDERS** the following:

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby conditionally certifies a class for settlement purposes only.

2. The class shall consist of four subclasses defined as follows:

    "**Exempt Paystub Class**": all individuals employed by either Defendant in California as exempt employees who received one or more paper paychecks and/or paper wage statements at any time between November 13, 2012 and July 17, 2014 (without regard to the fact that such individuals had access to Employee Self Service).

    "**Non-exempt Paystub Class**": all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time from November 13, 2012 to December 31, 2014.

    "**Meal Period Provision Class**": all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2012 and December 31, 2016 and who, during that time frame, received pay under the Other Pay Code.

"**Meal Period Pay Computation Class**": all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2009 and December 31, 2016 and who during that time frame received pay under the other Pay Code.

3. The Court hereby appoints Monica Wert as Class Representative.

4. The Court hereby appoints Matthew S. Dente and Diane E. Richard of Dente Richard LLP, George C. Aguilar and Brian Robbins of Robbins Arroyo LLP, and London D. Meservy of Meservy Law P.C., as Class Counsel to represent the Class.

5. The Court appoints Rust Consulting, Inc. (Rust") as the Settlement Administrator.

6. The Court approves, as to form and content, the Notice Packet attached as Exhibits 1 and 2 to the Settlement Agreement. The Court finds the distribution of the Notice Packet in the manner and form set forth in the Settlement Agreement and this Order satisfies due process requirements and the requirements of Rule 23(c)(2), is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Class members.

7. The Court hereby preliminarily approves the Settlement Agreement and the terms and conditions of Settlement set forth therein, subject to further consideration at a Final Approval Hearing.

8. The Court will hold a Final Approval Hearing on **September 25, 2017** at **10:30 a.m.**, in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, Courtroom 4B (4th Floor – Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

//
//

a. Finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and whether the Class should be certified for the purposes of effectuating the Settlement,

b. finally determining whether the proposed Settlement of the case on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved and ordered by the Court, and

c. ruling upon such other matters as the Court may deem just and appropriate.

9. The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Class Members.

10. Before the Fairness Hearing, Defendants shall file with the Clerk of the Court proof of their compliance with the notice provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

11. In compliance with Federal Rule of Civil Procedure 23(b)(3), the Class Members will be permitted to exclude themselves from the class. Any request to be excluded must be made in accordance with the Settlement and instructions on the Notice Packet, and must be postmarked no later than forty- five calendar days after the initial date of the mailing of the Class Settlement Notice.

12. Class Members may object to the Settlement by following the instructions set forth in the Class Settlement Notice. Any objection must be filed with the Clerk of this Court and served on the Settlement Administrator no later than forty-five calendar days after the initial date of the mailing of the Class Settlement Notice.

//

//

| | |
|---|---|
| 1 | 13. All objections must include the objector's full name, address, and |
| 2 | telephone number, along with a statement of the reasons for his or her |
| 3 | objection, whether or not he or she intends to appear at the fairness |
| 4 | hearing, and, if the objector intends to appear, whether he or she will |
| 5 | appear on his or her own behalf or through counsel. Objections that do |
| 6 | not contain all required information or that are received after the |
| 7 | Objection Deadline will not be considered at the Final Approval |
| 8 | Hearing. |

14. Any Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise.

15. Defendants are ordered to provide the Settlement Administrator with the Class information required by the Settlement Agreement within fourteen calendar days of the entry of this Preliminary Approval Order.

16. The Settlement Administrator is ordered to mail the Notice Packets to Class Members within thirty-five calendar days of the Settlement Administrator's receipt of the Class information.

15. Class Counsel shall file with the Clerk of this Court their application for attorney's fees, costs, and expenses no later than ten calendar days before the deadline for Class Members to opt out or object.

16. The Settlement Administrator shall provide the parties with a declaration of compliance with its obligation under the Settlement seven calendar days after the deadline for Class Members to opt out or object.

17. Class counsel are to file their Motion for Final Approval of Settlement twenty-eight calendar days before the Fairness Hearing.

18. Counsel are to file any responses to any objections seven calendar days before the Fairness Hearing.

//

19. The Parties are ordered to carry out the Settlement Agreement in the manner provided in the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: May 5, 2017

Hon. Cynthia Bashant
United States District Judge