# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA R. WERT, *individually and on behalf of others similarly situated,*<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>U.S. BANCORP, U.S. BANK NATIONAL ASSOCIATION and Does 1-10,<br><br>　　　　　　　　　　Defendants. | Case No. 13-cv-3130-BAS-AGS<br><br>**ORDER:**<br>**(1) OVERRULING THE OBJECTIONS OF LONNIE TIRAN (ECF NO. 97);**<br><br>**(2) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF NO. 98); AND**<br><br>**(3) GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 96)** |

Plaintiff, Monica R. Wert, on behalf of herself and other class members, filed claims against Defendants U.S. Bancorp and U.S. Bank National Association, claiming they failed to provide compliant itemized wage statements in violation of California Labor Code §226, and Plaintiff was entitled to the recovery of civil penalties for this violation under the Private Attorneys General's Act ("PAGA"), Cal.

Labor Code §2698 *et seq*. (ECF No. 45.) Additionally, Plaintiff requested civil penalties under the PAGA, alleging that Defendants violated California Labor Code §512 when they failed to comply with California's meal period requirements. (*Id*.)

In the Second Amended Complaint ("SAC") (ECF No. 45), which is the operative Complaint in this case, Plaintiff alleges first that Defendants failed to provide compliant itemized wage statements because the wage statements failed to: (1) show total hours worked by the employee; (2) adequately show deductions from wages, (3) itemize the dates in prior pay periods in which adjustments were made, and (4) itemize the inclusive dates of the pay period, including the pay period begin date. (SAC ¶¶2, 27.) In addition, Plaintiff alleges that Defendants failed to provide its employees required meal periods. (SAC ¶¶2, 29, 32.)

On May 5, 2017, this Court granted the parties Joint Motion for Preliminary Approval of Class Action Settlement, conditionally certifying the proposed settlement class, preliminarily approving the proposed class action settlement, over the objections of Charles Rodriguez (ECF No. 87), and setting a hearing for final approval. (ECF No. 94).

Now pending before this Court is the parties' Joint Motion for Final Approval of Class Action Settlement (ECF No. 98), Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 96), and Lonnie Tiran's Objections to the Proposed Settlement (ECF No. 97). For the reasons stated below and having considered all arguments presented at the Final Approval hearing on November 6, 2017, this Court **OVERRULES** the Objections of Lonnie Tiran (ECF No. 97), **GRANTS** the Motion for Final Approval of Class Action Settlement (ECF No. 98), and **GRANTS** the Motion for Attorneys' Fees and Costs (ECF No. 96).

I. **PROPOSED SETTLEMENT**

The proposed settlement agreement is attached as Exhibit A to the Declaration of Matthew S. Dente in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 86 ("Dente Decl.") ("Settlement"

or "Settlement Agreement")).  It proposes to certify for settlement four different subclasses.  The subclasses are defined as follows:

(1) "**Exempt Paystub Class**" is defined as "all individuals employed by either Defendant in California as exempt employees who received one or more paper paychecks and/or paper wage statements at any time between November 13, 2012 and July 17, 2014 (without regard to the fact that such individuals had access to Employee Self Service)." (Settlement ¶16.)

(2) "**Non-exempt Paystub Class**" is defined as "all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time from November 13, 2012 to December 31, 2014."  (*Id.* ¶30.)

(3) "**Meal Period Provision Class**" is defined as "all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2012 and December 31, 2016 and who, during that time frame, received pay under the Other Pay Code."  (*Id.* ¶26.)  "Other Pay Code" means the pay code Defendants used to make meal period premium payments.  (*Id.* ¶34.)

(4) "**Meal Period Pay Computation Class**" is defined as "all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2009 and December 31, 2016 and who during that time frame received pay under the other Pay Code."  (*Id.* ¶23.)
Individuals may be a member of more than one class.

The Settlement provides that Defendants will set aside a non-reversionary settlement amount of $7,000,000. (*Id.* ¶22.)  From this Maximum Settlement Fund will be deducted any Class Representative Enhancement Payment (Plaintiff will seek $10,000) (*id.* ¶61(i)), Class Counsel fees (Counsel will request 30% of the settlement or $2,100,000( (*id.* ¶61(j)), Costs (not to exceed $25,000 (*id.*), settlement administration costs (Rust Consulting ("Rust") is requesting $60,000), and payments to the Labor and Workforce Development Agency ("LWDA") as 75% of funds

attributable to release of PAGA claims (the Parties calculate this amount to be $572,500) (*id*. ¶61(c)(i)−(iv)).

After final settlement is approved, checks will be mailed directly to Class members. The average payout for the non-exempt paystub class is currently $384.52. (Declaration of Abigail Schwartz for Rust, ECF No. 98-5 ("Schwartz Decl.") ¶16.) The average payout for the exempt paystub class is $72.14, for the meal period provision class is $19.95 and for the meal period computation class is $60.74. (*Id*.) There are 3441 class members who will receive checks for $500 or more, and 82 class members who will receive $1000 or more. (*Id*.) The checks will be valid for six months, after which they will revert to the State of California Department of Industrial Relations Unclaimed Wages Fund in the name of the Class member who did not cash the check. (Settlement ¶61.)

In addition to the monetary settlement, the Defendants have agreed to make changes to their payroll system to resolve any issues raised by this lawsuit. (Dente Decl. ¶16.)

The Agreement provides for a release from each participating Class member, depending on the subclass of which he or she is a member, as follows:

(1) **"Exempt Paystub Class" and "Non-exempt Paystub Class"** agree to release "any and all claims for failure to provide accurate and/or complete itemized wage statements in violation of Labor Code §226(a) between [November 13, 2012 and July 17, 2014 ("Exempt Paystub Class) or between November 13, 2012 to December 31, 2014 ("Non-exempt Paystub Class")], including a release for statutory penalties under Labor Code §226(e) and civil penalties recoverable under PAGA for violations of Labor Code §226(a), as well as a release for all claims known and unknown (pursuant to Civil Code §1542), but only as to these released claims." (Settlement ¶¶17, 31.)

(2) "**Meal Period Provision Class**" agrees to release "any and all claims for civil penalties under PAGA for failure to provide meal periods in accordance with

Labor Code §§512 and 226.7 and Section 11(A) of IWC Wage Order 4-2011 for the pay periods in which and/or for which they received pay under the Other Pay Code, as well as a release from all claims known and unknown (pursuant to Civil Code §1542), but only as to these released claims, from November 13, 2012 through December 31, 2016." (*Id.* ¶27.)

(3) "**Meal Period Pay Computation Class**" agrees to release "any and all claims for failure to properly compute compensation for paid meal period premiums under Labor Code §226.7 and the Section 11(B) of IWC Wage Order 4-2011, including compensation claims under §226.7 and claims for civil penalties under PAGA for §226.7 violations for failure to properly calculate the regular rate when paying a meal period premium. For the period from November 13, 2010 to [April 14, 2013], there shall be a release of all claims for statutory penalties under Labor Code §203, without limitation as to the underlying basis for the claim." For the period between April 15, 2013 and December 31, 2016, there shall be a release of penalties under Labor Code §203, but only to the extent the claim is premised on Defendants' alleged failure to properly calculate the regular rate when paying a meal period premium, not claims premised on other underlying alleged violations like unpaid overtime, off-the-clock work, or for any other violation other than Defendants' failure to properly calculate the regular rate when paying a meal period premium. (*Id.* ¶24; Amendment to Class Action Settlement ECF No. 90-2 ("Settlement Amendment").)[1]

Finally, the Settlement provides for an Incentive Award of $10,000 for named Plaintiff Monica Wert, and she is required to enter into a release of claims that is much broader than that required of the other class members. (Settlement ¶¶61(i), 62.)

---

[1] The time period for this release was amended by the Parties in response to the Objection filed by Charles Rodriguez. (*See* ECF Nos. 87 (Rodriguez Objection), 90-2 (Settlement Amendment).)

## II. ANALYSIS

### A. Class Certification

The parties seek to certify four subclasses under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. For all the reasons laid out in its Order granting joint Motion for Preliminary Approval of Class Action Settlement (ECF No. 94), the Court finds the request appropriate. The parties have demonstrated that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party is typical of the claims or defenses of the class; (4) the representative party will fairly and adequately protect the interests of the class; and (5) in this case, a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy. (*Id.*) Hence, this Court certifies the four subclasses defined above.

### B. Fairness, Reasonableness, and Adequacy of the Proposed Settlement

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.3d 1268, 1276 (9th Cir. 1992). However, according to Federal Rule of Civil Procedure 23(e)(2), "the court may approve [a settlement that would bind class members] only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether the proposed settlement is fair, reasonable, and adequate, "a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

The Court considered these factors in its Order granting the Joint Motion for Preliminary Approval of Class Action Settlement. (ECF No. 94 at 9−14.) Little has

changed since that Order was issued with respect to the first four factors. Therefore, the Court adopts its reasoning in the preliminary approval order and finds that the strength of Plaintiff's case and risk of further litigation, the consideration offered, the extent of discovery completed and stage of the proceedings, and the experience and views of counsel all militate in favor of granting the Motion for Final Approval of Class Action Settlement. There is no governmental participant in the case.

The Court last considers additional reaction of the class members to the proposed settlement since the preliminary approval order was issued. Out of 17,774 class members actually noticed, only one objected to the proposed settlement. (Schwartz Decl. ¶¶10, 15.) Additionally, Rust received seventy-six requests for exclusion, four of which were untimely and four of which were incomplete, amounting to 0.42% of the class. (*Id.* ¶14.) Thus, the vast majority of the class appears to support the proposed settlement.

The one objector to final approval of the proposed settlement, Lonnie Tiran, argues first that the attorneys' fees requested are excessive and second that this is an unfair deal. (ECF No. 97.) The Court recognizes special scrutiny should be given to an agreement in which the class counsel fee comes out of the general settlement fund and the agreement includes a provision that the defendants not oppose the plaintiff's requested attorneys' fees. *See In re Bluetooth Headsets Products Liab. Litig*, 654 F.3d 935, 946−47 (9th Cir. 2011) (hereinafter "*In re Bluetooth*"). However, the Court may uphold the agreement while lowering the fee award where it finds the requested attorneys' fees to be excessive but there is no further evidence class counsel betrayed class interest for its own benefit. *Id.* at 942. The Court addresses the requested attorneys' fees below. However, the Court does not find that the requested attorneys' fees in this case signify that the resulting agreement was the result of collusion or results in an unfair result for the class members.[2]

---

[2] Both parties filed responses to Mr. Tiran's objection. (ECF Nos. 103, 104.) The Court is particularly persuaded by Plaintiff's argument that the Settlement here

Lonnie Tiran additionally objects to the *cy pres* recipient in this case arguing that the "court should allocate unused funds to the members of the class over *cy pres* funds being distributed to any other organization that brings no benefit to the class." (ECF No. 97 at 8.) The Court suspects this is a boilerplate objection brought against another class action settlement since it has no applicability to this case. The Settlement Agreement provides that after final settlement is approved, all remaining funds will be divided among participating class members. Checks will be mailed directly to Class members. The checks will be valid for six months, after which they will revert to the State of California Department of Industrial Relations Unclaimed Wages Fund in the name of the Class member who did not cash the check. (Settlement ¶61.) There is no designation or necessity for a *cy pres* fund. Hence, this objection is also overruled.

### C. Fairness Hearing and Required Notice to Parties

#### 1. Notice Requirements

Rust mailed notice to 18,025 class members. (Schwartz Decl. ¶10.) After repeated attempts to locate the notices returned as undeliverable, 251 notice packets remain undeliverable at this time. (*Id*.) In addition, the notice required under the Class Action Fairness Act has been completed. (Declaration of Audrey Shen Choi, ECF No. 98-7.) No objections have been received from any of the noticed government entities. (*Id*.) The Court has reviewed the Declarations and finds that notice was completed as ordered by the Court in its Preliminary Approval of Class Action Settlement and further finds that the notice satisfies the requirements of Rule 23(c)(2)(b).

---

bears little similarity to the one at issue in *In re Bluetooth*. Unlike that case, the Settlement here is not so grossly disproportionate to the class award and is non-reversionary. Moreover, this Court is expressly analyzing whether the requested attorneys' fees are reasonable.

### 2. Fairness Hearing

Fed. R. Civ. P. 23(e)(2), requires that "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The purpose of a fairness hearing is to provide the court with sufficient evidence for it to make an informed decision relating to the fairness of the proposed settlement." *UAW v. General Motors Corp.*, 235 F.R.D. 383, 386 (E.D. Mich. 2006). A fairness hearing need not have all the procedures and protections of a full trial; it is a forum for interveners to voice their objections and for the fairness of the settlement to be determined, and a court is within its discretion to limit the hearing as necessary to meet those objectives. *UAW*, 235 F.R.D. at 386; *Tenn. Ass'n of Health Maint. Org., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001). On November 6, 2017, the Court held a fairness hearing. No objectors or interveners appeared.

### D. Incentive Award

As part of the Settlement Agreement, the parties request that the Court approve a $10,000 incentive award for named Plaintiff Monica Wert. (Settlement ¶61(i).) In exchange, Ms. Wert agrees to a broad release of claims against the Defendants that is much broader than that of the rest of the Class. (*Id.* ¶62.) No opposition to this request has been filed.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[]." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Nonetheless, the Court has obligation to assure that the amount requested is fair. *In re Bluetooth*, 654 F.3d at 941.

In this case, Class Counsel detail the work expended by Ms. Wert on behalf of the class. (Declaration of Matthew S. Dente In Support of Motion for Approval of Class Action Settlement, ECF No. 98-2 ¶¶26−29.) Mr. Dente indicates that Ms. Wert

spent substantial time: participating in interviews and telephone consultations with Class Counsel, locating and gathering information and documents in support of the claims, responding to written inquiries from Class Counsel, preparing responses to discovery requests, preparing for her deposition, and preparing for and participating in the mediation via telephone. (*Id.* ¶26.) In addition, Ms. Wert took a risk that her participation in the litigation would have a negative impact on her current and future employment opportunities. (*Id.* ¶28.) And Ms. Wert assumed the risk of a judgment against herself and personal liability for an award of costs to U.S. Bank in the event she was not successful with her case. (*Id.* ¶29.) In light of this, the Court finds the requested $10,000 incentive award for Ms. Wert is appropriate.

### E. Attorneys' Fees and Costs

Plaintiffs' counsel requests reimbursement of $19,401.02 in costs, $60,000 in administrative fees to reimburse Rust, and $2,100,000, or 30% of the total settlement, in attorneys' fees. (ECF No. 96.) Defendants do not oppose. (ECF No. 99.) In his Objections to the Class Action settlement, Lonnie Tiran argues that the requested attorneys' fees "seem excessive." (ECF No. 97 at 5.) Tiran requests that the Court require "Class Counsel to produce accurate and detailed contemporaneous billing records for verification and comparison to any Declarations submitted in support of Attorneys' Fees" and costs. (*Id*. at 6.) Tiran also requests "that the Court appoint an independent agency or person to review such records to verify the validity and analyze for a variety of claims including, but not limited to, duplication and miscalculation." (*Id*.)

The Court has reviewed the itemization of the requested costs, and has further inquired into specific costs at the fairness hearing. The Court finds that the requested costs are appropriate. Hence the Court will award Class Counsel $19,401.02 in costs. The Court further approves $60,000 to Rust for the costs of administering the Class Settlement. (*See* Schwartz Decl. at ¶17.)

With respect to the requested attorneys' fees, courts have an independent obligation to ensure that the attorneys' fees award, like the settlement, is reasonable. *In re Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, the courts have the discretion to employ a "percentage of recovery method." *Id*. at 942. Typically, courts calculate 25% of the fund as a "bench mark" for a reasonable fee award. *Id*. The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The 25% figure was "given for guidance" but the Ninth Circuit does not foreclose a different benchmark, since the district court must determine what is reasonable in a given case. *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (citing *Bebchick, Paul Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989)). In many cases, the benchmark is closer to 30%. *Id.*; *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% − 33 1/3% of the total settlement value, with 25% considered the benchmark"); *Morris v. Lifescan, Inc.,* 54 Fed. App'x. 663 (9th Cir. 2003) (33% of class fund was not abuse of discretion).

To determine the reasonableness of the percentage requested in any given case, the court generally must consider: "(1) the result achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases" with the overall result and benefit to the class as the most critical factor. *In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino,* at 1048−50).

Additionally, courts are encouraged to cross-check the "percentage of recovery method" by employing the "lodestar method" as well. *In re Bluetooth*, 654 F.3d at 949. In the "lodestar method," the Court multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate for the work. *Id*.

at 941. The hourly rate may be adjusted for the experience of the attorney. *Id.* The resulting amount is "presumptively reasonable." *In re Bluetooth*, 654 F.3d at 949. However, "the district court . . . should exclude from the initial fee calculation hours that were not 'reasonable expended.'" *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (quoting *Hensley v. Eckerhart*, 401 U.S. 424, 433−34 (1983)). The Court may then adjust this presumptively reasonable amount upward or downward by an appropriate positive or negative multiplier reflecting a whole host of reasonableness factors including the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment, and, foremost in considerations, the benefit achieved for the class. *In re Bluetooth*, 654 F.3d at 942.

These methods save the Court from having to conduct a detailed review of billing records and save the class from having to pay the costs of a special master. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374−75 (N.D. Cal. 1989) (explaining why such reviews are unnecessary).

In this case, given the fact that there is a common fund, the Court finds the "percentage of recovery method" is the preferable method of calculating attorneys' fees. *See In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d at 1046 (despite the discretion given to the district court to use the lodestar or percentage method, in cases with a common fund, the "percentage of recovery method" appears to be dominant). Counsel request that the court approve 30% of the class fund, which is within the typical range of acceptable attorneys' fees in the Ninth Circuit.

### 1. Results Achieved

Ultimately, the court finds the result is an excellent one for the class. As discussed below, Plaintiff faced serious challenges to recovery in this case. At the very least, the prolonged litigation, including the likelihood of appeal, meant that any recovery would be greatly delayed. Instead, the average payout for the non-exempt paystub class is currently $384.52. (Schwartz Decl. ¶16.) The average payout for the exempt paystub class is $72.14, for the meal period provision class is $19.95 and

for the meal period computation class is $60.74. (*Id.*) Class members may receive payouts from more than one subclass. There are 3441 class members who will receive checks for $500 or more, and 82 class members who will receive $1000 or more. (*Id.*) This is a clear win for the class given the risks of litigation.

### 2. Risks of Litigation

The Plaintiff faced some serious barriers to recovery. Even if Plaintiff had succeeded in proving that Defendant provided non-compliant wage statements, Defendant argued that employees had access to all required information under the electronic system, and the omission of any information in the wage statements resulted in no injury. Furthermore, with respect to the computation of meal period payments, Defendants had a strong legal argument that bonus and other forms of non-base pay were not required to be paid as part of meal and rest break premium payments. The existence of this unresolved legal argument meant the case would almost certainly have been appealed with uncertain and delayed results. Finally, with respect to the provision of meal periods, there were factual issues as to whether the "other pay code" necessarily signified that meal periods were not provided to the entire class.

### 3. Contingent Nature and Burden Carried by Plaintiff

This case was taken by Class Counsel on a contingency fee basis with Class counsel fronting the costs of litigation. (Declaration of George C. Aguilar in Support of Plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 96-2 ("Aguilar Decl.") ¶5.) The results of the litigation were "far from certain." (*Id.*) "In order to properly handle and prosecute this action, Class Counsel were precluded from taking other cases, and in fact, had to turn away other meritorious fee-generating cases." (Declaration Matthew S. Dente in Support of Plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 96-5 ("Dente Decl. Attorneys' Fees") ¶27.)

### 4. Awards in Similar Cases

Awarding 30% of the common fund for attorneys' fees is typical in wage and hour cases. *Martin v. AmeriPride Services, Inc.,* No. 08-cv-440-MMA (JMA), 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) ("courts may award attorneys' fees in the 30−40% range in wage and hour class actions that result in recovery of a common fund under $10 million."); *Singer v. Becton Dickinson & Co.,* No. 08-cv-821-IEG (BLM), 2008 WL 2899825, at *8 (S.D. Cal. June 1, 2008) (awarding 33 1/3 % of class fund in a wage and hour class action case and listing other similar awards between 33 1/3% and 40% in wage and hour class actions). Class counsel lists other cases where similar percentages were awarded in wage and hour cases. (Dente Decl. Attorneys' Fees, ¶4.)

Thus, the Court finds the requested attorneys' fees of $2,100,000, consisting of 30% of the class common fund is reasonable in this case. In addition, the Court has cross-checked this amount by employing the lodestar method as well. The Court has reviewed the attorneys' hourly rates and finds that, given the experience of the attorneys, the requested rates are reasonable for this district. Furthermore, the Court has reviewed the chart summarizing the work performed by all Class Counsel, broken down by task category, with the corresponding amount of time billed, and finds the amounts billed to be reasonable. (Aguilar Decl., Ex. 2.) The Court finds that the methods the attorneys used to avoid billing duplicative or excessive time were appropriate. (*See* Aguilar Decl. ¶6; Dente Decl. Attorneys' Fees ¶¶33, 35−36.) Thus, the Court finds the appropriate lodestar in this case is $801,548.75.

The Court further finds this lodestar amount should be increased by a multiplier of 2.62 because of the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment and benefit achieved for the class, as discussed above. Therefore, the Court **GRANTS** Class Counsel's request for $2,100,000 in attorneys' fees.

# III. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** the Parties' Motion for Final Approval of Class Action Settlement (ECF No. 98), and hereby **ORDERS** the following:

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court **HEREBY CERTIFIES** a class for settlement purposes as follows.

2. The class shall consist of four subclasses defined as:

   a) "**Exempt Paystub Class**": all individuals employed by either Defendant in California as exempt employees who received one or more paper paychecks and/or paper wage statements at any time between November 13, 2012 and July 17, 2014 (without regard to the fact that such individuals had access to Employee Self Service).

   b) "**Non-exempt Paystub Class**": all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time from November 13, 2012 to December 31, 2014.

   c) "**Meal Period Provision Class**": all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2012 and December 31, 2016 and who, during that time frame, received pay under the Other Pay Code.

   d) "**Meal Period Pay Computation Class**": all individuals employed by either Defendant in California as non-exempt, hourly paid employees at any time between November 13, 2009 and December 31, 2016 and who during that time frame received pay under the Other Pay Code.

3. The Court **HEREBY CONFIRMS** Monica Wert as Class Representative and grants the request for a $10,000 incentive award.

4. The Court **HEREBY CONFIRMS** Matthew S. Dente and Diane E. Richard of Dente Richard LLP, George C. Aguilar and Brian Robbins of Robbins Arroyo LLP, and London D. Meservy of Meservy Law P.C., as Class Counsel to represent the Class.

5. The Court **HEREBY CONFIRMS** Rust as the Settlement Administrator and awards the Settlement Administrator $60,000 for the costs of administering the Settlement Agreement.

6. The Court finds the Notice completed satisfies due process requirements and the requirements of Rule 23(c)(2), is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Class members.

7. The Court **HEREBY APPROVES** the Settlement Agreement and the terms and conditions of Settlement set forth therein.

8. The Court finds Defendants have complied with the notice provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715.

9. The objections of Lonnie Tiran are **OVERRULED.** (ECF No. 97.)

10. The Court **GRANTS** the Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 96), and awards Class Counsel $19,401.02 in costs and $2,100,000 in attorneys' fees.

11. All class member are **ORDERED** bound by the Settlement Agreement except the sixty-eight Class Members who timely and validly excluded themselves from the Class.

12. The Parties are **ORDERED** to carry out the Settlement Agreement in the manner provided in the Settlement Agreement.

**IT IS SO ORDERED.**

**DATED: November 7, 2017**

Hon. Cynthia Bashant
United States District Judge